IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Amy Milionis, individually and as a class representative,<br><br>    Plaintiff,<br><br>vs.<br><br>United Services Automobile Association, Professional Surveillance & Investigation, Inc., Richard David Jones, John Does, and ABC Corporations<br><br>    Defendants. | Case No. _____<br><br>**NOTICE OF REMOVAL** |

**TO:  THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, ANDERSON DIVISION:**

Defendant United Services Automobile Association ("USAA") respectfully removes to this Court the above-captioned matter from the Court of Common Pleas, Tenth Judicial Circuit, South Carolina.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441(a) and (b), 28 U.S.C. § 1446, and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5 million.  In support of this Notice of Removal, USAA states as follows:

**BACKGROUND**

1.     USAA is a named Defendants in the civil action instituted in the Court of Common Pleas, Tenth Judicial Circuit, County of Anderson, South Carolina, captioned: *Amy Milionis, individually and as class representative, vs. United Services Automobile Association, Professional Surveillance & Investigations, Inc., Richard David Jones, John Does, and ABC Corporations*, Civil Action No. 22-CP-04-0835 (the "Lawsuit").

2. The Summons and Complaint for the Lawsuit were filed on April 13, 2022. *See* Exhibit A ("Compl.").

3. Professional Surveillance & Investigation, Inc., Richard David Jones, and unnamed "John Does" and "ABC Corporations" are also named as Defendants in the Lawsuit

4. USAA was served with the Complaint for the Lawsuit on May 9, 2022, when it was served on the South Carolina Department of Insurance. *See* Exhibit B at 2.

5. 30 days after May 9, 2022, is June 8, 2022. This Notice of Removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a) because it is filed on June 3, 2022.

6. This action is being removed to this Court because this Court is the United States District Court for the district and division corresponding to the place where the state court action was pending, pursuant to 28 U.S.C. § 1441(a).

7. USAA will give written notice of the filing of this Notice of Removal to all parties, as required by 28 U.S.C. § 1446(d), and will file a copy of this Notice of Removal with the Clerk of the Court of Common Pleas, Tenth Judicial Circuit, County of Anderson, South Carolina, as further required by 28 U.S.C. § 1446(d).

8. A copy of all process, pleadings, and orders served upon USAA are contained in Exhibit B. A copy of the state Court docket is attached as Exhibit C.

**BASIS FOR REMOVAL**

9. Removal is proper under CAFA, 28 U.S.C. § 1332(d), 28 U.S.C. § 1441(a) and (b), 28 U.S.C. § 1446, and 28 U.S.C. § 1453.

10. Under CAFA, this Court has original jurisdiction over any asserted class action[1] that: (1) includes at least one class member whose citizenship is diverse from that of the defendant;

---

[1] CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of

2

(2) involves an aggregate amount in controversy of $5 million or more, exclusive of interest and costs; and (3) has at least 100 putative class members.  *See* 28 U.S.C. § 1332(d), as amended by The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4.  Each requirement is satisfied here.

   I.   **Minimal Diversity Exists**

   11.   CAFA's minimal diversity requirement is satisfied.  As Plaintiffs allege, USAA is a reciprocal inter-insurance exchange and an unincorporated association with members in all fifty states.  Compl. ¶ 2; *see also* Exhibit D ¶ 4.

   12.   For purposes of jurisdiction under CAFA, an "unincorporated association" like USAA "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C.A. § 1332(d)(10); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 703-05 (4th Cir. 2010).

   13.   USAA has its principal place of business in Texas and is organized under the laws of Texas.  *See* Exhibit D ¶ 5; *see also Safranek v. USAA Cas. Ins. Co.*, 525 F. Supp. 3d 707, 727 (M.D. La. 2021) ("Reciprocal inter-insurance exchanges (and specifically, USAA), have been held in several cases to be unincorporated associations.  As such, USAA's citizenship is determined by 28 U.S.C. § 1332(d)(10), which provides that, 'For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized,' *i.e.*, Texas.")

   20.   Plaintiff alleges that she is a citizen of South Carolina.  Compl. ¶ 1.

---

Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Plaintiffs allege "Class Action Allegations" and seek certification of a class of South Carolina insureds pursuant to South Carolina's class action rule.  Compl. ¶¶ 19-24

3

21.     Because Plaintiff is a citizen of a state other than Texas, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**II.     There are over 100 proposed class members**

22.     28 U.S.C. § 1332(d)(5) requires at least 100 proposed class members.

23.     Plaintiff's class definition includes "all individuals in South Carolina on whom USAA, through its agents, servants and/or employees, conducted any 'medical canvassing' or otherwise inquired about and received confidential health information about that individual from medical providers without any HIPAA authorization from that individual." Compl. ¶ 19.

24.     Plaintiff herself alleges that the "class consists of, at a minimum, hundreds of individuals." Compl. ¶ 20.

25.     USAA has identified, 1,055 individuals whose insurance claims may have been analyzed by what Plaintiff describes as "medical canvasing" in her Complaint. Exhibit E ¶ 5.

26.     This satisfies 28 U.S.C. § 1332(d)(5).

**III.     The Class Claims Place More than $5 million in controversy**

27.     CAFA provides this court with original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(2).

28.     The language of 28 USC § 1446(a) tracks the language of Rule 8(a), so a Notice of Removal need only meet the pleading standard "imposed on a plaintiff in drafting an initial complaint." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).

29.     And, because "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds

the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

30. Plaintiff does not quantify her proposed damages in her Complaint, except to say that "Plaintiff and the class members have each suffered damages that exceed One Hundred Dollars per person as required by Rule 23(a)(5) of the South Carolina Rules of Civil Procedure." Compl. ¶ 24; *see also* SCRCP 5(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all only if the court finds . . . (5) in cases in which the relief primarily sought is not injunctive or declaratory with respect to the class as a whole, the amount in controversy exceeds one hundred dollars for each member of the class.")

31. However, she alleges that, as a result of a "blatant and shocking disregard" for her rights, "Plaintiff has suffered serious physical and mental injury as well as humiliation." Compl. ¶ 16.

32. Indeed, her invasion of privacy claims require exactly such a showing. *Rycroft v. Gaddy*, 281 S.C. 119, 124, 314 S.E.2d 39, 43 (Ct. App. 1984) ("When a plaintiff bases an action for invasion of privacy on 'intrusion' alone, bringing forth no evidence of public disclosure, it is incumbent upon him to show *a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom*." (emphasis added)); *see also Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 213 (D.S.C. 1996).

33. Plaintiff further alleges that Defendants' negligence and gross negligence "proximately caused physical, emotional, psychological, and cognitive injuries and damages to the Plaintiff and Plaintiff class." Compl. ¶ 28.

34. Plaintiff thus seeks relief for "the following injures and damages: (a) Physical and mental injures; (b) Medical expenses; (c) Emotional distress; (d) Unwanted publicity and

exposure; (e) Shame, embarrassment, and humiliation; (f) Loss of ability to earn wages; (g) Damage to reputation; (h) Time and wages lost from gainful employment; (i) Legal fees and expenses; (j) Other general and special damages; (k) Physical and emotional pain and suffering; (l) Statutory damages; (m) Treble damages; (n) All other available past and future economic and noneconomic damages; and (o) Other damages as will be shown through discovery and at trial." Compl. ¶ 45.

35. Plaintiff also seeks punitive damages. Compl. ¶ 33 & at 13. Punitive damages may be considered when determining the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240 (1943).

36. While Plaintiff did not quantify her expected recovery in her Complaint, she did in a settlement demand to USAA made on May 25, 2022, in which she demanded $300,000 to resolve just her individual claims against USAA, in her individual capacity.

37. "Although settlement negotiations are not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability for or invalidity of the claim or its amount, they can be considered 'to show the stakes' when determining whether the amount in controversy is met." *Simpson v. Ocwen Loan Servicing, LLC*, No. 19-cv-29, 2020 WL 1151065, at *3 (N.D. W.Va. Mar. 9, 2020) (quoting *Grinell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012)); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *Schur v. Zackrison*, No. 15-cv-1013, 2015 WL 8484441, at *2 (E.D. Va. Dec. 8, 2015).

38. Indeed, federal courts have recognized that "the amount sought in a pre-removal settlement demand letter is valuable evidence to indicate the amount in controversy at the

time of removal." *Leonard v. Sentry Select Ins. Co.*, No. 15-cv-675, 2016 WL 1393382, at *3 (M.D. La. Mar. 11, 2016), *R&R adopted*, 2016 WL 1369397 (M.D. La. Apr. 6, 2016).

39. Courts in this district are in accord. *See Hermanson v. Bi-Lo, LLC*, No. 20-cv-3956, 2021 WL 4147113, at *3 (D.S.C. Aug. 31, 2021) (denying motion to remand where Plaintiff's settlement demand sought only $50,000, but also asserted that in litigation she would be entitled to recover "an indeterminate amount" for categories of damages such as "pain and suffering, loss of enjoyment of life, inconvenience, and mental and emotional distress"); *Progressive W. Ins. Co., Plaintiff, v. William Morrissey, Defendant.*, No. 21-cv-1257, 2021 WL 3275883, at *3 (D.S.C. July 29, 2021) (considering pre-suit demand letter as evidence establishing the amount in controversy ); *Meadows v. Nationwide Mut. Ins. Co.*, No. 14-cv-04531, 2015 WL 3490062, at *4 (D.S.C. June 3, 2015) (same).

40. Importantly, because Plaintiff purports to bring this case as a class action, she thus also believes that her claims are "typical of the claims or defenses of the class." SCRCP 23(a)(3). *See In re Blackbaud, Inc.*, No. 20-mn-02972, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (extrapolating the plaintiff's estimated damages to each member of the class because the plaintiff "asserted that his claims were 'typical' of the entire class").

41. USAA has identified, 1,055 individuals whose insurance claims may have been analyzed by what Plaintiff describes as "medical canvasing" in her Complaint Exhibit E ¶ 5.

42. Thus, each class member need only be entitled to recover $4,739.34 in damages to meet CAFA's $5,000,000 jurisdictional threshold.  ($5,000,000 / 1,055 = $4,739.34.)

43. While Plaintiff does not quantify her damages, her $300,000 individual settlement demand, coupled with "typical" class allegations of "serious physical and mental injury" and demands to recover damages such as "medical expenses," "loss of ability to earn wages," "damage

7

to reputation," "time and wages lost from gainful employment," and "physical and emotional pain and suffering," show that each class member's damages plausibly exceed $4,739.34.  *See* Compl. ¶¶ 16, 45; *see also Blackbaud*, 2021 WL 1940581 ("Given [plaintiff's] alleged damages of at least $50,000, [plaintiff's] assertion that his claims are typical of the class, and the purported class of thousands, the original Complaint satisfies CAFA's five (5) million-dollar amount-in-controversy requirement.")

44.     *Meadows v. Nationwide Mutual Insurance Company* is instructive for the analysis. No. 14-cv-04531, 2015 WL 3490062 (D.S.C. June 3, 2015).  There, like here, Plaintiff did not include a determinate amount of damages in her Complaint, but she sent a settlement demand letter asking for $22,790 for the settlement of Plaintiff's claims.  *Id.* at *4.  The Court recognized that this demand was sufficient to satisfy the $75,000 jurisdictional amount in controversy because "[s]ubjecting Plaintiff's claims in her demand letter alone to treble damages brings the amount in controversy to $68,370.00, independent of Plaintiff's claims for punitive damages and attorney fees."  *Id.*  The additional amount requested for punitive damages satisfied the court that "it falls within a legal certainty or reasonable probability that the value of Plaintiff's claims exceed $75,000.00."  *Id.* (citing *Mattison v. Wal-Mart Stores, Inc.*, No. 10-cv-01739, 2011 WL 494395, at *3 (D.S.C. Feb. 4, 2011)).

45.     Here, no such multiplication is necessary.  Plaintiff seeks $300,000 for the resolution of her individual claim against USAA and also asserts that her claims are typical of other class members.

46.     So, under Plaintiff's own view of the case, there is potentially $316,500,000 in controversy.  ($300,000 for an individual claim * 1,055 possible class members with typical claims = $316,500,000.)

47.     In line with *Meadows*, other courts in this district have recognized that when a plaintiff does not allege a specific amount in controversy, a request for punitive damages *alone* can satisfy a $75,000 hurdle.

48.     For example, in *Mattison v. Wal-Mart Stores, Inc.* the plaintiff did not quantify her damages, but sought similar categories of damages as Plaintiff here – for example, "medical expenses," "physical pain and suffering," "emotional pain and suffering," "mental pain and suffering," "humiliation," and "embarrassment." 2011 WL 494395, at *3. *Accord* Compl. ¶¶ 16, 45. But "[e]ven though [plaintiff's] complaint does not specify the exact amount of damages [plaintiff] is claiming in this action," the court found the $75,000 amount in controversy satisfied because "her request for punitive damages alone, which are properly considered for purposes of determining the amount in controversy, makes it difficult for [plaintiff] to prove she could not possibly recover the jurisdictional limit were she to prevail at trial." *Mattison*, 2011 WL 494395, at *3; *see also Woodward v. Newcourt Comm. Fin. Corp.,* 60 F.Supp.2d 530, 532 (D.S.C. 1999) (holding that "[plaintiff's] claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount"); *Schur v. Zackrison*, No. 15-cv-1013, 2015 WL 8484441, at *4 (E.D. Va. Dec. 8, 2015) ("It is not at all unusual for juries to return verdicts for emotional damages far exceeding the liquidated monetary damages a plaintiff incurs.").

49.     *Hermanson v. Bi-Lo, LLC*, reached the same conclusion, holding: "Even though Plaintiff's Complaint does not specify the exact amount of damages she is claiming in this action, her request for punitive damages alone, which are properly considered for purposes of determining the amount in controversy, makes it difficult for her to prove she could not possibly recover the

jurisdictional limit were she to prevail at trial." No. 20-cv-03956, 2021 WL 4147113, at *3 (D.S.C. Aug. 31, 2021).

50. Likewise, in *McClurkin v. Champion Laboratories, Inc*, the plaintiff argued that the $75,000 amount in controversy was not satisfied because she asserted wrongful termination from employment in which she earned only $13.12 an hour. 2011 WL 5117599, at *3. However, the court held that this was sufficient to establish the amount in controversy because "Plaintiff's Complaint seeks 'actual and punitive damages'" and "Plaintiff's 'claim for punitive damages makes it virtually impossible to say that the claim is for less than the jurisdictional amount.'" *Id.* (citing *Woodward,* 60 F.Supp.2d at 532).

51. The proposition that punitive damages can satisfy an amount in controversy is well recognized in this district. *See, e.g.*, *Patrick v. City of Aiken*, No. 16-cv-03496, 2019 WL 4736453, at *7 (D.S.C. Sept. 27, 2019); *Owners Ins. Co. v. Cruz Accessories*, No. 17-cv-2215, 2018 WL 902290, at *2 (D.S.C. Feb. 15, 2018); *Clear Choice Constr., LLC v. Travelers Home & Marine Ins. Co.*, No. 17-cv-1890, 2018 WL 718960, at *4 (D.S.C. Feb. 6, 2018); *Lighthouse Prop. Ins. Corp. v. Rogers*, No. 17-cv-1553, 2017 WL 3634593, at *2 (D.S.C. Aug. 22, 2017); *Custom Companies, Inc. v. Peoplease Corp.*, No. 17-cv-1311, 2017 WL 2495196, at *2 (D.S.C. June 9, 2017); *Barker v. Washington Nat. Ins. Co.*, No. 12-cv-1901, 2013 WL 1767620, at *2 (D.S.C. Apr. 24, 2013).

52. Notably, *Mattison, Hermanson,* and *McClurkin* recognize that a request for punitive damages can vault an unquantified amount of damages over the *$75,000* jurisdictional threshold. But here, much less of a jump is required. The punitive damages plaintiff requests on behalf of each class member only need to vault their claims over $4,739.34 per claimant to satisfy the jurisdictional threshold for CAFA.

10

53.     And, again, no vaulting is even necessary, as Plaintiff's individual settlement demand was $295,260 *greater* than the damages-per-class-member necessary to satisfy CAFA's jurisdictional requirement.

54.     USAA recognizes that some cases have diminished the evidentiary value of settlement demands, believing that particular demands reflect "puffing and posturing" rather than a specific quantification of damages. *See Jackson v. Wal-Mart Stores, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).

55.     The argument has little validity here, where Plaintiff's settlement demand was $295,260 greater than the damages-per-class-member necessary to satisfy CAFA's jurisdictional requirement. To discredit the settlement would require a finding that Plaintiff's demand was 1.6% truth, and 98.4% puffery. ($295,260 / $300,000 = 98.4%.)

56.     The argument also makes little logical sense. A settlement offer may well involve puffery over a plaintiff's *expected value* in a litigation (possible damages * probability of success - costs of litigation), but the touchstone for determining the amount in controversy is the maximum *possible damages* that can be recovered. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (The amount in controversy "is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits.")

57.     It makes no sense for a plaintiff to offer a settlement demand with puffery above the *maximum possible* amount that the plaintiff could recover, because such a demand would be dead on arrival. In such situations, the defendant is always better off rolling the dice in litigation

11

rather than accepting the offer (particularly where, as here, Plaintiff demands attorney's fees accounting for the transaction costs of litigating the case). *See* Compl. ¶ 45.i.

58.    Judge Easterbrook of the Seventh Circuit Court of Appeals described the point well, explaining why a settlement demand *below* the amount in controversy ($60,000) could evidence maximum *possible* damages above the jurisdictional bar:

> To the extent that any event after the date of removal can shed light on the jurisdictional question, the willingness to accept $60,000 supports a conclusion that the "controversy" exceeds $75,000. Rising–Moore did not offer to take $60,000 if a jury should decide in his favor and nothing otherwise; he wanted $60,000 *with certainty,* which implies that the stakes at trial comfortably exceed the minimum. Plaintiffs win about half of all tort suits that go to trial. [Citations omitted.] If Rising–Moore had a 50% likelihood of a $120,000 verdict at trial, he would offer to accept $60,000 with certainty, which has the same expected value; both sides then could save legal expenses. If he is risk averse, he would be willing to accept less than half of the anticipated award: then an offer to take $60,000 might imply that the stakes were $150,000. If his lawyer had private knowledge suggesting that the chance of prevailing was less than 50%, then the anticipated verdict implied by the offer (if a jury found in plaintiff's favor) would be even higher. So, for example, a risk-averse plaintiff who thought that he had a one-in-three chance of winning $200,000 at trial would take a sure $60,000 happily. Only if Rising–Moore were risk-neutral and had more than an 80% chance of winning a favorable verdict would the $60,000 offer imply that the full controversy is under $75,000.

*Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 817 (7th Cir. 2006); *see also Brunacini v. Valencia-Bosque Farms Phillips 66*, No. 99-cv-642, 1999 WL 35809390, at *3 (D.N.M. Aug. 23, 1999) ("Brunacini argues that the offer of settlement may not be considered in determining the jurisdictional amount. The argument defies reason. An offer of settlement is intended to be a compromise, that is, a discount from the value of the claim. Offers of settlement are compelling evidence of the minimum amount in controversy.").

59.    Thus, Plaintiff's broad categories of relief, which are allegedly typical of other class members (including "serious physical and mental injury," "medical expenses," "loss of ability to earn wages," "damage to reputation," "time and wages lost from gainful employment," and various

forms of "physical and emotional pain and suffering"), her demand for punitive damages, and her $300,000 request to settle her *individual* claim shows that at least $4,739.34 in damages per class member are in controversy in this case.

60. Finally, beyond all this, Plaintiff seeks "Legal fees and expenses" which are available under the South Carolina Unfair Trade Practices Act. *See* Compl. ¶ 45.i; *Liberty Mut. Ins. Co. v. Emp. Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 531 (D.S.C. 2001) ("The SCUTPA mandates that a court award attorney's fees and costs to a successful party"). This additional amount is also included in the amount in controversy. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013).

61. CAFA's $5,000,000 jurisdictional amount in controversy is thus satisfied.

**IV.  The exceptions under CAFA do not apply.**

62. "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee*, 574 U.S. at 89 (quoting S.Rep. No. 109–14, p. 43 (2005)); *see also Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 (4th Cir. 2019) ("[W]e are obliged to construe and apply CAFA's grant of federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion.").

63. However, CAFA specifies one situation where a district court "may" decline to exercise jurisdiction over a class action (the "permissive" exception), and two situations where a district court "shall" decline to exercise such jurisdiction. 28 U.S.C.A. § 1332(d)(3)-(4) (the "local controversy" and "home state" exceptions).

13

64. A party seeking remand bears the burden of showing that any of these exceptions apply. *Taylor v. Charleston S. Univ.*, No. 20-cv-2731, 2021 WL 631907, at *2 (D.S.C. Feb. 18, 2021).

65. None of these exceptions are applicable here.

66. Under 28 U.S.C. § 1332(d)(3), the permissive exception, a district court may decline to exercise jurisdiction over certain class actions "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes . . . are citizens of the State in which the action was originally filed."

67. The permissive exception is inapplicable because over two-thirds of the proposed class are from South Carolina. *See* Compl. ¶ 19 (defining the class as "all individuals in South Carolina on whom. . .").

68. The local controversy and home state exceptions are also not applicable, because each requires a significant defendant to be a citizen of the state in which the action was originally filed (South Carolina).

69. The local controversy exception under 28 U.S.C. § 1332(d)(4)(A) requires that "at least 1 defendant is a defendant – (aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II).

70. Similarly, the home state exception under 28 U.S.C. § 1332(d)(4)(B) requires that the "primary defendants" be "citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

71. Neither exception is applicable here because the only Defendant from South Carolina, Richard David Jones, is meaningless to the class claims. Plaintiff's allegations stem from USAA and PSII's alleged "'medical canvas' without authorization." Compl. ¶ 1. But the medical canvas was allegedly requested by USAA's adjuster, conducted by PSII (which is Florida citizen), and delivered back to USAA. Compl. ¶¶ 3, 13-16. Defendant Jones had nothing to do with the alleged medical canvasing for Plaintiff's claim. *See id.* He is only tangentially related to the facts of Plaintiff's *individual* case in that he owned the insurance policy, that covered the individual, that was involved in the accident with Plaintiff, that gave rise to Plaintiff's insurance claim against USAA, that generated the request for medical canvasing, that allegedly caused "serious physical and mental injury" to Plaintiff. *See* Compl. ¶¶ 9-16. As to every other punitive class member *besides* Plaintiff, Jones had *no* involvement in their claims.

72. Thus, Jones is not "a defendant -- (aa) from whom significant relief is sought by members of the plaintiff class; [and] (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." § 1332(d)(4)(A)(i)(II). Jones had no involvement in the claims of any other class member besides Plaintiff, and class members could not seek any relief (much less "significant relief") from Jones. The local controversy exception does not apply.

73. Nor does the home state exception apply because *all* of the "primary defendants" are not citizens of South Carolina. 28 U.S.C. § 1332(d)(4)(B). *See Dean v. Draughons Junior Coll., Inc.*, No. 3:12-CV-0157, 2012 WL 2357492, at *3 (M.D. Tenn. June 20, 2012) ("Pursuant to the plain language of §§ 1332(d)(3) and (4), both exemptions require that all of the 'primary defendants' and a substantial proportion of the proposed plaintiff class (majority or plurality) be citizens of the state in which the action was filed); *Adams v. Macon Cnty. Greyhound Park, Inc.,* 829 F.Supp.2d 1127, 1138 n. 13 (M.D.Ala.2011) ("The consensus among the courts is that

15

the plural use of 'defendants' means that all primary defendants must be citizens of the state in which the action was originally filed").

74. All of the conduct in the Complaint relating to the "medical canvas" that allegedly caused Plaintiff's injury was conducted by USAA and/or PSII. *See* Compl. ¶¶ 9-16. Thus, USAA and PSII are at least also "primary defendants." Since all "primary defendants" are not citizens of South Carolina, the exception is inapplicable.

75. Jones is not even *a* "primary defendant." The Complaint makes clear that Jones is not "the 'real target' of plaintiff's accusations." *See Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 505-06 (3d Cir. 2013). Nor does he have "potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *See id.*. Instead, he has only a tangential factual link to plaintiff's individual claims and he has no exposure to any absent class members.

**RESERVATION OF RIGHTS**

76. USAA intends no admission of fact, allegation, claim, liability or wrongdoing by this Notice of Removal, and USAA expressly reserves all defenses, motions, and pleas including, without limitation, objections to the sufficiency of Plaintiff's pleadings and the propriety of class certification.

77. USAA further reserves the right to submit additional evidence in support of the Notice of Removal, including as may be necessary to address and refute any contentions set forth in a motion to remand.

WHEREFORE, USAA respectfully requests that this Court assume full jurisdiction over this action.

        Respectfully submitted,

        WHELAN MELLEN & NORRIS, LLC

        By: /s/ ROBERT W. WHELAN
        Robert W. Whelan
        Federal Bar No. 9242
        E-Mail: robbie@whelanmellen.com
        Post Office Box 939
        Charleston, SC 29402
        (843) 998-7099

        Rodger L. Eckelberry
        (*pro hac vice application forthcoming*)
        Ali I. Haque
        (*pro hac vice application forthcoming*)
        Kevin P. Zimmerman
        (*pro hac vice application forthcoming*)
        BAKER & HOSTETLER LLP
        200 South Civic Center Drive, Suite 1200
        Columbus, Ohio 43215
        Telephone: 614-228-1541
        Facsimile: 614-462-2616
        Email: reckelberry@bakerlaw.com
              ahaque@bakerlaw.com
              kzimmerman@bakerlaw.com

        *Attorneys for United Services Automobile Association*

Charleston, South Carolina

June 3, 2022